iCare Child Development versus Alethea Cicero-Brown. Mr. Sellers. Good morning, Your Honors. May it please the Court. Matthew Sellers along with my co-counsel Naveen Ramachandrappa. We represent iCare. Busy day for you. It is. We like to stay busy. The District Court, the most important error in the case is the District Court finding that iCare had no property interest in continued participation in CAHPS. So I want to get right to the state policies and laws that create that property interest. I'll start with the CAHPS policy. I tell you, from my own perspective, to cut to the chase, I could assume that there is a property interest, but still not think that a hearing is constitutionally required, looking at the Matthews factors. To me, this isn't like a welfare recipient who's dependent on the benefits to live. This is a business that continues to operate, and it's the sort of requirement that the state imposes that, look, you got to keep these records of, you know, who's, what children are there, who's attending, you know, that sort of thing. And we have to be able to inspect it. And if we come in and you're not complying with that, it's not really not much to have an evidentiary hearing about. And we're going to dismiss you. And when I look at this, when I look at the factors, it's hard for me to understand how a hearing is required for that. Let me first say, the district court didn't reach the Matthews balancing test, and so that wasn't developed in the way it might have been, had that been an issue with the preliminary injunction. But in any event... Yeah, I mean, we're here for abuse of discretion. We can affirm for any reason supported by the record, I can look at this record and apply the Matthews factors myself. Absolutely. But the, notwithstanding that the district court didn't reach that issue, the Constitution does require notice and a hearing in this case. ICARE's interest, although maybe not as strong as a welfare recipient's, is strong here. We've shown that the ICARE expanded from one center to eight in reliance on this program, served hundreds of recipients of this program for some time. So we think the interest is strong, balanced against the risk of error, the second. The interest is because of reliance? Well, the interest is strong for several reasons. I mean, the first is ICARE's investment in its business based on its participation in the program. But it's also the interest of the... But isn't it, and clarify for me, I thought that in terms of a property interest, it's one that the government creates, not that one that your client gets to create based on their behavior. That's true. But in terms of when we, assuming there is a property interest, get to the Matthews test, the strength of the interest in that property interest I think is broader than just the rules and policies that create the property interest in the first place. And so... Well, you just... It doesn't put you out of business, though. That's true, it didn't, but it... It's not like the welfare recipient who depends on it to live. That was my point. That's true, isn't it? That is true. This is much more like the physician who can continue to see patients, even if not Medicare patients, right? I mean, this to me is very akin to that. I would say that I would maintain the interest is strong, but the risk of error here also is high in the absence of hearing. And the reason for that is the violation that ICARE has been accused of is not just the failure to comply, and that is something that ICARE can test. There's been conflicting testimony about that, that the district court didn't resolve. But on top of that, there have been accusations that ICARE intentionally refused to comply. I thought ICARE just wanted to follow up and show them the legitimacy of their practices, but there was really no dispute that they didn't have the records of a couple of these locations that they were required to produce at request. It is true that some locations were not able to produce the records at the time. That's true. Yeah, so I don't see how there's much of a dispute about that. The dispute is as to the additional... There's other accusations that have been made by the government against ICARE, and those go to accusations that it's been suspected of fraud. So that's your defamation claim, or are you saying this is related to the property interest as well? It appears that part of the reason for the dismissal, as I understand the government's brief, was because of allegations of fraud and because the violation was willful. Those are the kinds of things that can be addressed and resolved at a hearing. To this point, ICARE has been told that it's credibly suspected of fraud. But the operating agreement does it not. It says, look, you can be dismissed if you don't produce these records. It does say that dismissal is one sanction that's available to DECAL. That is true, but... Whether they suspect that there's more of a problem with these facilities or not, to me, seems really kind of beside the point. Well, the policy suggests in Section 16 of the CAHPS policy, in the section addressing the allowable sanction for failure to produce the records, the first sanction it says is a claim for an overpayment will be made by DECAL. That's not happened here. Then it says there may be additional sanctions after conferral with DECAL. That suggests that additional reasons have factored into the decision, and that's what could be addressed at a hearing. Again, there have been allegations of fraud and intentional violations of the policies. Intent and fraud are not the sort of things that can be resolved without a hearing and the opportunity to present evidence. What you're really wanting is reinstatement to the program? That is correct. Whether they might be entitled ultimately to a little more process than they obtained is a different question. I mean, the preliminary injunction you sought is for reinstatement to the program. It's just not clear to me that the District Court abused its discretion in not granting that injunctive relief at this stage. Well, the District Court based its refusal to reinstate, I care, on its finding that there was no property interest, which it seems this Court is willing to accept. As I said, you know, we can affirm for any reason supported by the record. That's true, but I think the District Court in this situation should have the opportunity to exercise its discretion in the finding was made that there was irreparable harm to, I care, by the District Court because of this dismissal. If the District Court was wrong that there's a property interest, but that there's no property interest. You know, this is a preliminary injunction. Shouldn't we cut to the chase rather than having a ping-pong match where it keeps going up and back to the District Court? Oh, well, this claim is going back to the District Court one way or the other. I understand that, but my point is this. Look, no to abuse of discretion in not reinstating you to the program. Notwithstanding, you may have had a property interest. If we apply the Matthews factors, clearly not an abuse not to reinstate you to the program. It doesn't mean the case is over, that you might not be entitled to some form of process, but why would we say, well, you got the property interest question wrong. We're going to send it back. And you might still be able to deny it on the Matthew factors. We're not even going to talk about that. And then we're going to have a preliminary injunction second appeal? Potentially, yes. That's the ping-pong match I'm talking about. I know. I fully understand, Your Honor, but I will say again, the District Court found that I care was irreparably harmed. The preliminary injunction is within the District Court's discretion. The District Court should be allowed to exercise that discretion on a correct understanding of the law. Okay. Well, all right. Let's say, go with your line, which is that we do need to resolve whether the court was right about the property interest. And let's say, just speaking for myself, we conclude your client didn't have a property interest, but there's another avenue, right? If there was a constitutional violation. You put a 14th Amendment claim in here, but you seem to conflate it with the property interest requirement. Setting the interest aside, what is the constitutional violation at issue? Well, the constitutional violation was termination without the required process. Well, the way that the case law, as I read it, for the most part requires some improper or discriminatory reason for the decision. So, assuming that extra element is required, what is the discriminatory reason? I don't believe procedural due process requires an arbitrary or discriminatory reason. I think the process itself is the claim, but in this case... So, what you're saying is your claim is that the constitutional deprivation is the failure to provide a pre-deprivation history. That is correct. That you have a property interest and that if you're going to be deprived of it, you have to be given notice and an opportunity to be heard. Yes, I would say... And that's it. And that's it. Meaning that if we find you don't have a property interest and we find that you weren't entitled to an evidentiary hearing and we find that the record, for any reason that we can affirm, is satisfied, then you're done. If there is no property interest and if there is no right to a hearing, then that is correct. We believe there is a property interest created by the agreement and policy and the Georgia statute. We believe that process is due. Judge Pryor, you mentioned pre-deprivation process. There's been no pre- or post-deprivation process. There were requests for appeals. So, there's been no process at all, pre or post. You want reinstatement to the program. That is correct. And that's why I was asking, because that gets a little bit into the merits, arguably, in terms of what was wrong with the basis for the decision. But if we're not there and you're saying you're not there, then I won't take us there. So, as a remedy, yes, we do request reinstatement. But we think that's an appropriate remedy because the deprivation, we're saying, can't be made until there has been pre-deprivation process. And so, reinstatement until the process has been provided is the appropriate remedy for that. Okay. I think we understand your case, Mr. Sellers. You saved some time for rebuttal. You saved four minutes for rebuttal, I guess. So, let's hear from Mr. Kelly. Did you hear that, Valerie? Four minutes for rebuttal. May it please the Court. I will pick up where I think the Court's questioning was going, which absolutely identifies a straightforward and easy way to resolve the case, which is that even according to page one of ICARE's opening brief, it states that they were dismissed for the failure to comply with an on-site audit. Right after that, page one of that same brief says that ICARE did not comply with that audit. They offered to comply a few days later, but the policies are crystal clear that the documents must be provided immediately. So, we're not only in a situation where the sort of initial question of whether documents were provided or not is fairly straightforward, we're also in a situation where that failure to do so is not disputed. Now, ICARE has tried to point to sections of the appellate brief that refers to that failure to comply being willful, but to be clear, the dismissal itself and the program policies are agnostic to the reason for the failure. All that matters under the policies is that there was a failure. So, I do think this Court's questioning was highlighting the correct way to go about the case, and I would point out one more aspect to that, is that under ICARE's own theories of how these program policies work, they treat those policies as being mandatory, as stripping the Department of Discretion. So, under their own theory of the case, of their property interest, the Department was required, with no discretion, to dismiss them once there was a failure to comply with the on-site audit. Of course, we also think that ICARE does not have a property interest to continued participation in the program because the program and the federal statute, state statutes, and regulations all explicitly say that providers shall not be entitled to any benefit, particularly in continued participation. So, the Court could rule on that ground as well, but if there are no questions, I'll yield my time. Okay. I don't hear any. Mr. Sellers? Thank you, Your Honor. One point I'd like to make in rebuttal, the policy is not agnostic to intentional or unintentional violations. I'd point the Court to Section 16.5.4.3 of the CAHPS policy, which says that provider errors that are the result of unintentional submission or omission of documentation are different than program violations, which are the result of unintentional. Yeah, but it's true. Your own brief has acknowledged, I think, that this at least appears to be a mandatory policy of the state, the failure to produce the records results in dismissal. So, our argument is that a predicate finding of noncompliance is required to get to the adverse effect. There's no dispute that there was noncompliance. We agree that some of these centers were not able to produce the records immediately. That is true. But the intent versus not unintentional violations is a meaningful distinction in the policy, and that's why we think the process is due. Okay. Any other questions? I don't hear any. Thank you very much. We're going to be adjourned for the week.